IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 23-280 |
| | : | |
| MAURICE L. GARRETT | : | |

**MEMORANDUM**
**with post-hearing Findings of Fact and Conclusions of Law**

**KEARNEY, J.**                                                                                                   June 7, 2024

Our Grand Jury charged Maurice L. Garrett with three counts of possessing with intent to distribute fifty grams or more of methamphetamine, one count of possessing with the intent to distribute fifty grams or more of fentanyl, and one count of possessing a firearm during a drug trafficking crime. He now moves to suppress evidence of crystal methamphetamine and heroin found in his 2015 Dodge Journey on May 31, 2023. The United States opposes his request. We held an extensive evidentiary hearing. We assessed the credibility of witnesses and evaluated the evidence during and after the hearing. We enter findings of fact and conclusions of law detailing the basis for denying Mr. Garrett's Motion to suppress in an accompanying Order:

**I.   Findings of fact.**

1.     The Drug Enforcement Administration began investigating Maurice L Garrett in April 2023 for possessing and distributing illegal drugs.

2.     The Administration used toll analysis, confidential informant information, recorded telephone calls, and text messages as investigative tools.

3. The Administration arranged two controlled payments and one controlled narcotics purchase between a confidential informant and Mr. Garrett occurring between April 2023 and June 2023.

4. The confidential informant purchased approximately 520 grams of methamphetamine during the controlled narcotics purchase occurring on May 17, 2023.

5. Investigators saw Mr. Garrett use a Honda car to complete the controlled transactions with the confidential informant.

6. Investigators observed Mr. Garrett leave from and return to 429 N. Simpson Street during the controlled transactions.

7. Judge Hey signed search warrants for 429 N. Simpson Street and Mr. Garrett's Honda car on May 23, 2023.

8. At approximately 11:59 a.m. on May 26, 2023, investigators saw Mr. Garrett enter a black 2015 Dodge Journey and go to the Journey's trunk. Investigators saw Mr. Garrett close the Dodge Journey's trunk at 12:16p.m.

9. At approximately 8:07 p.m. on May 28, 2023, investigators observed Mr. Garrett park the Honda car and enter the Dodge Journey. Investigators observed Mr. Garrett access the Dodge Journey's trunk.

10. Investigators observed Mr. Garrett sitting in the Dodge Journey on May 29, 2023.

11. Investigators' check on the vehicle identification number revealed Mr. Garrett owned the Dodge Journey.

12. Special Agent Scanlan swore, based on his training and experience, Mr. Garrett used the Dodge Journey to further his drug trafficking activities. Special Agent Scanlan swore

drug traffickers use several vehicles to store narcotics and proceeds from narcotics sales to avoid detection from law enforcement.

13. Special Agent Scanlan swore Mr. Garrett lives with children and could have opted to store bulk narcotics in the Dodge Journey to keep the narcotics away from the children.

14. Investigators observed Mr. Garrett leave 429 N. Simpson Street in his Honda car on May 31, 2023.

15. Investigators located Mr. Garrett and with the assistance of the Pennsylvania State Police initiated a high-risk felony stop.

16. Investigators recovered a loaded Glock firearm with an extended magazine from Mr. Garrett's waistband, a keychain including car keys for the Dodge Journey and a Ford truck, and approximately 114 grams of suspected crystal methamphetamine in the driver's side door panel of the Honda.

17. During the traffic stop, a separate group of investigators executed the search warrant at 429 N. Simpson Street.

18. Special Agent Scanlan and two investigators located Mr. Garrett's Dodge Journey after executing the search warrant at 429 N. Simpson Street.

19. Special Agent Scanlan looked through the front windshield of Mr. Garrett's Dodge Journey to obtain the vehicle identification number on the dash visible through the window.

20. Special Agent Scanlan walked to Special Agent Beck's truck to run the vehicle identification number through the Drug Enforcement Administration system.

21. Special Agent Beck entered the Dodge Journey with the car keys obtained from Mr. Garrett during the earlier high-risk felony stop. Special Agent Beck entered the Dodge Journey to start the vehicle and drive it to the impound lot.

22. Special Agent Beck looked on the floor of the Dodge Journey and in the rear seats after entering the car to ensure his safety as he swore his experience and training indicate it is not uncommon for drug traffickers to house pets in their vehicles.

23. Special Agent Beck observed a bag on the floor of the driver-side seat of the Dodge Journey. Special Agent Beck observed several packages of methamphetamine in the bag.

24. Special Agent Beck moved the bag containing methamphetamine packages from the driver-side seat to the backseat of the Dodge Journey.

25. Special Agent Beck told another investigator he observed a bag containing methamphetamine in Mr. Garrett's Dodge Journey. Special Agent Beck testified he did not inform Special Agent Scanlan about the bag containing methamphetamine.

26. Special Agent Scanlan sought a search warrant for Mr. Garrett's Dodge Journey on May 31, 2023.

27. Judge Lloret signed a search warrant for the Dodge Journey on May 31, 2023.

28. Special Agent Scanlan credibly swore the details of the investigation into Mr. Garrett's drug trafficking, Mr. Garrett's entering the Dodge Journey several days preceding Mr. Garrett's traffic stop, and recovering a Dodge Journey key from Mr. Garrett's key chain during Mr. Garrett's traffic stop.

29. Investigators executed the search warrant on Mr. Garrett's Dodge Journey later in the afternoon of May 31, 2023. They recovered: (1) one black-and-white footlocker bag containing a heat-sealed bag containing approximately 525 grams of suspected crystal

methamphetamine; (2) seven heat-sealed bags, two with no stickers and five with a black sticker containing a white star, containing approximately 3382 grams of suspected crystal methamphetamine; (3) one rectangular shaped object wrapped in green plastic containing approximately 788 grams of suspected heroin; (4) a piece of mail addressed to "Maurice Garrett"; (5) a business card for on the Move LLC company with the name "Maurice"; (6) an invoice with the name "Maurice"; (7) a social security card and birth certificate for "Maurice Garrett"; and (8) a mail parcel from the United States Department of State Philadelphia Passport Agency sent to "Maurice Garrett."

30. The Administration tested the substances recovered from the Dodge Journey. The testing confirmed methamphetamine with 100% purity weighing 3,905.7 grams. The Administration determined the rectangular shaped object wrapped in green plastic contained fentanyl and not heroin.

31. Our Grand Jury returned a three-count indictment on June 28, 2023, charging Mr. Garrett with, among other things, possessing with intent to distribute fifty grams or more of methamphetamine.

32. Our Grand Jury returned a superseding indictment on September 6, 2023, charging an additional count of possessing with intent to distribute fifty grams or more of fentanyl and possessing with intent to distribute fifty grams or more of methamphetamine relating to the May 31, 2023, search of the 2015 Dodge Journey.

II. **Conclusions of law.**

33. Special Agent Scanlan's May 31, 2023 affidavit contained sufficient circumstantial evidence creating probable cause supporting Judge Lloret's issuance of the search warrant.

34. Judge Lloret drew reasonable inferences the Dodge Journey contained evidence of Mr. Garrett's drug trafficking and creating a nexus between the Dodge Journey and Mr. Garrett's drug trafficking activities.

35. Special Agent Scanlan does not need to present direct evidence of Mr. Garrett using the Dodge Journey to further his drug trafficking activities.[1]

36. Special Agent Scanlan submitted ample circumstantial evidence of Mr. Garrett's drug trafficking and use of the Dodge Journey. The investigators:

    a. Confirmed the confidential informant's tip Mr. Garrett trafficked large quantities of methamphetamine in Philadelphia;

    b. Arranged the confidential informant's controlled payments to Mr. Garrett to pay down the confidential informant's narcotics trafficking debt;

    c. Arranged the confidential informant's controlled purchase of methamphetamine from Mr. Garrett;

    d. Observed Mr. Garrett accessing the Honda, the Dodge Journey;

    e. Recovered 114 grams of suspected crystal methamphetamine from Mr. Garrett's Honda;

    f. Recovered a loaded firearm from Mr. Garrett during their search of Mr. Garrett after detaining him;

    g. Recovered a keychain containing keys for Dodge Journey; and

    h. Investigated a Ford truck after a Pennsylvania State Police K-9 alerted the Troopers of the presence of narcotics in the Ford truck.

37. Judge Lloret can give weight to Special Agent Scanlan's conclusion Mr. Garrett used the Dodge Journey to further his drug trafficking activities based on Special Agent Scanlan's training and experience.[2]

38. Special Agent Scanlan's conclusion informed by his training and experience and the circumstantial evidence Special Agent Scanlan presented Judge Lloret created probable cause supporting the search warrant for the Dodge Journey.

### III. Analysis.

Special Agent Scanlan's affidavit created sufficient probable cause supporting Judge Lloret's issuance of the search warrant for Mr. Garrett's Dodge Journey. Special Agent Scanlan presented direct evidence of Mr. Garrett's drug trafficking activities and circumstantial evidence he used the Dodge Journey to further his drug trafficking activities. This direct and circumstantial evidence in tandem allowed Judge Lloret to infer the Dodge Journey likely contained evidence of Mr. Garrett's drug trafficking activities.

The Fourth Amendment protects individuals from "unreasonable searches and seizures."[3] Judges issue search warrants supported by probable cause.[4] Probable cause exists where "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[5] There need not be direct evidence "linking the place to be searched to the crime" to create probable cause.[6] Probable cause "can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide' the fruits of his crime."[7] The Magistrate Judge issuing the search warrant is "entitled to draw reasonable inferences about where evidence is likely to be kept" and may rely on the "conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found."[8]

We must determine whether a "substantial basis" existed for Judge Lloret's finding of probable cause to issue the search warrant for the Dodge Journey.[9] We give "great deference" to Judge Lloret's probable cause determination.[10]

We are guided by Judge Pappert denying a defendant's motion to suppress evidence obtained from a residence despite the evidence tying the residence to the defendant being several months old.[11] A Philadelphia police officer viewed a video posted on an individual's Instagram account.[12] The video depicted two men inside a vehicle with one man brandishing a large firearm.[13] A different police officer reviewed the video and recognized Mr. Golden as the individual brandishing the firearm, whom the Philadelphia police arrested three months earlier.[14] The police officers learned Mr. Golden listed 4923 Hoopes Street, Philadelphia as his home address when arrested three months before the video's release.[15] The officers applied for and received a search warrant for 4923 Hoopes Street despite no recent evidence tying the Instagram video to Mr. Golden's residence.[16] Judge Pappert denied Mr. Golden's suppression motion finding the issuing judge had a substantial basis to infer Mr. Golden's residence contained the firearm.[17] Judge Pappert reasoned, though it would have been "preferable" if the police officers dated the video and the affiant mentioned "based on his experience and knowledge" previously convicted felons store illegally possessed firearms in their homes, the affiant presented sufficient evidence creating probable cause.[18]

We are also guided by Judge Mariani denying suppression and finding the officer-affiant's experience and training and defendant's statements concerning his residence created probable cause to support the issued search warrant.[19] Pennsylvania state troopers conducted a traffic stop of Mr. Jones's car and learned Mr. Jones's and his passenger were returning from Philadelphia after several days and without luggage.[20] The Pennsylvania state police officers

8

detained Mr. Jones and his passenger, towed the vehicle, applied for a search for the vehicle, and discovered a variety of narcotics included 314 grams of crack cocaine.[21] A confidential informant told the police Mr. Jones "sells everything" and keeps his profits in a house different than "his government address of 253 Stanton Street."[22] The police learned Mr. Jones paid utility bills at the other address. The affiants swore they learned in their training and experience drug traffickers keep proceeds and narcotics in separate locations and applied for a search warrant for the other address to recover proceeds from drug trafficking.[23] Judge Mariani denied Mr. Jones's suppression motion holding the discovery of narcotics in Mr. Jones's vehicle, the confidential informant's statements Mr. Jones kept his profits in a location different than his government address, the affiants' knowledge Mr. Jones paid utility bills at the other address, and the affiants' training and experience investigating narcotics trafficking created substantial basis probable cause existed supporting the search warrant for the 325 High Street residence.[24]

      We are also persuaded by the distinctive facts in *Stanko* causing Chief Judge Brann to suppress evidence because the probable cause affidavit contained limited facts.[25] Pennsylvania state police arrested Mr. Stanko for violating federal firearms law.[26] Pennsylvania state police officers listened to phone calls Mr. Stanko made while in prison where Mr. Stanko used coded language describing other locations in Mr. Stanko's home where he stored firearms.[27] Pennsylvania state police executed a search warrant on Mr. Stanko's home and recovered more firearms.[28] Pennsylvania state police overheard an additional telephone conversations between Mr. Stanko and his mother in which he asked his mother and former girlfriend check his cabin and pay taxes on the property "so as not to raise suspicion or alert law enforcement."[29] A federal agent applied for a search warrant for Mr. Stanko's cabin alleging only three facts: (1) Mr. Stanko previously used coded language to instruct his mother and former girlfriend to hide

9

firearms; (2) Mr. Stanko instructed his mother to pay the taxes on the cabin property to avoid alerting law enforcement; and (3) firearms are generally maintained and stored for long periods of time.[30] Pennsylvania state police recovered a shotgun from Mr. Stanko's cabin. Mr. Stanko moved to suppress.[31] Chief Judge Brann suppressed the shotgun finding the agent's affidavit three facts "fail[ed] to either give rise to an inference of criminal activity or are so generalized as to lack any connection to [Mr.] Stanko's cabin."[32]

Special Agent Scanlan presented more fulsome facts supporting the affidavit for probable cause than did the issuing judges in *Golden* and *Stanko*. Special Agent Scanlan presented evidence Mr. Garrett entered the Dodge Journey three days before the Pennsylvania state police detained Mr. Garrett and recovered a loaded firearm and 114 grams of crystal methamphetamine. Mr. Garrett's connection to the Dodge Journey is more temporally proximate than the three months between Mr. Golden's original arrest and the challenged search warrant Judge Pappert upheld in *Golden*. Special Agent Scanlan swore investigators observed Mr. Garrett access the Dodge Journey and use the Dodge Journey's trunk. Judge Lloret relied on more fulsome evidence to issue the search warrant than did the issuing judge in *Stanko* who approved the search warrant of Mr. Stanko's cabin on three factual averments.

The breadth of evidence Judge Lloret reviewed is more like the evidence Judge Mariani reviewed in *Jones*. Special Agent Scanlan swore a multi-month investigation of Mr. Garrett's drug trafficking activities, corroborated evidence of Mr. Garrett's drug trafficking by a confidential informant, the confidential informant completing several controlled narcotics purchases from Mr. Garrett, investigators observing Mr. Garrett access the Dodge Journey several times in the days preceding Pennsylvania state police detaining Mr. Garrett, recovering keys to the Dodge Journey from Mr. Garrett's keychain during Pennsylvania state police

detaining Mr. Garrett, and Special Agent Scanlan's experience and training drug traffickers use multiple vehicles to further their drug trafficking activities. This is more evidence than Judge Mariani found compelling in *Jones* which included confidential informant statements and utility bill payments Mr. Jones made at the searched residence. We find a substantial basis existed for Judge Lloret to find probable cause to issue the search warrant for Mr. Garrett's Dodge Journey.

Mr. Garrett seems to rest his argument on a hypothetical presumption flatly contradicted by credible evidence before us. He argues Agent Scanlan's affidavit of probable cause is constitutionally insufficient because Agent Scanlan intentionally omitted further indicia of drug trafficking discovered by Agent Beck.

Mr. Garrett argues Agent Beck *must* have told Agent Scanlan about Agent Beck's observing a bag containing methamphetamine before Agent Scanlan applied for search warrant for Mr. Garrett's Dodge Journey and Agent Scanlan therefore omitted information about the bag in applying for the search warrant. Agent Beck testified he did not tell Agent Scanlan about the bag he observed in the Dodge Journey.

Our Court of Appeals considers affidavits of probable cause constitutionally suspect if they contain omissions "material, or necessary, to the finding of probable cause."[33] Mr. Garrett seems to argue Agent Scanlan knew about the bag containing methamphetamine and omitted its existence from his affidavit of probable cause. And Agent Scanlan's omission constituted information material to Judge Lloret's finding of probable cause.

Mr. Garrett seems to have it backwards. Even if Agent Scanlan knew about the bag containing methamphetamine, his omission of it from his affidavit of probable cause is not material to Judge Lloret's finding of probable cause to issue the search warrant. If anything, the bag's existence is further indicia Mr. Garrett trafficked large quantities of drugs. Judge Lloret

11

found Agent Scanlan's affidavit of probable cause sufficient to issue a search warrant without information about the bag containing methamphetamine. It is unclear how failing to include further indicia of drug trafficking in an affidavit of probable cause Judge Lloret considered constitutionally sufficient would render the same affidavit constitutionally suspect.

We also have no basis to find Agent Beck should not have learned of the bag when he saw it while moving the Dodge Journey to the impound lot to preserve evidence. Officer Beck credibly testified he looked in the Dodge Journey to determine the presence of an animal and saw the bag. We further find the uncontradicted testimony of Agent Beck not sharing his discovery of the bag with Special Agent Scanlan to be credible. Mr. Garrett is entitled to speculate outside the courtroom but needs some evidence to suggest something improper in the officers finding the bag with narcotics in the Dodge Journey under a valid search warrant.

## IV.     Conclusion

We deny Mr. Garrett's Motion to suppress because Special Agent Scanlan presented fulsome facts in his affidavit supporting Judge Lloret's finding of probable cause to search Mr. Garrett's 2015 Dodge Journey. Any omission, knowing and intentional or otherwise, of Agent Beck's discovery of a bag containing methamphetamine does not render Judge Lloret's finding of probable cause or Special Agent Scanlan's affidavit of probable cause constitutionally insufficient.

---

[1] *United States v. Price*, 558 F.3d 270, 282 (3d Cir. 2009).

[2] *United States v. McConnell*, No. 22-3153, 2023 WL 7410427, at *2 (3d Cir. Nov. 9, 2023) (citing *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)).

[3] U.S. CONST. amend. IV.

[4] *Illinois v. Gates*, 462 U.S. 213, 227 (1983).

[5] *United States v. Capozzi*, No. 20-2953, 2022 WL 989428, at *2 (3d Cir. Apr. 1, 2022), *cert. denied*, No. 23-5378, 2023 WL 6558576 (U.S. Oct. 10, 2023) (quoting *Gates*, 462 U.S. at 238).

[6] *United States v. Caesar*, 2 F.4th 160, 174 (3d Cir. 2021) (quoting *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001)).

[7] *United States v. Mortimer*, 387 F. App'x 138, 140 (3d Cir. 2005) (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).

[8] *McConnell*, 2023 WL 7410427, at *2 (quoting *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000)).

[9] *United States v. Bowers*, 548 F. Supp. 3d 504, 508 (W.D. Pa. 2021) (quoting *Gates*, 462 U.S. at 236).

[10] *Bowers*, 548 F. Supp. 3d at 509 (quoting *Hodge*, 246 F.3d at 305).

[11] *United States v. Golden*, No. 19-545, 2020 WL 2848183 (E.D. Pa. June 2, 2020), *aff'd*, No. 21-2618, 2023 WL 2446899 (3d Cir. Mar. 10, 2023).

[12] *Id.* at *1.

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.* at *1-2.

[17] *Id.* at *5.

[18] *Id.*

[19] *United States v. Jones*, No. 3:21-CR-126, 2023 WL 2287652 (M.D. Pa. Feb. 28, 2023).

[20] *Id.* at *2.

[21] *Id.* at *3.

[22] *Id.*

[23] *Id.*

[24] *Id.* at *5.

---

[25] *United States v. Stanko*, 537 F. Supp. 3d 771 (M.D. Pa. 2021).

[26] *Id.* at 775.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 775-76.

[30] *Id.* at 776.

[31] *Id.*

[32] *Id.* at 778.

[33] *Pinkney v. Meadville, Pennsylvania*, 95 F.4th 743, 749 (3d Cir. 2024) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)).